## No. 10,415.

THE BOARD OF CAPITOL MANAGERS, ET AL. *v.* RUSAN.

Decided November 6, 1922.

Action in mandamus for the payment of wages to a discharged employe of the state.   Writ granted.

*Affirmed.*

1.   CIVIL SERVICE—*Discharge of State Employe.* An employe of the state who is within the civil service amendment to the Constitution, cannot be discharged without a hearing on the charges preferred against him.

2.   MASTER AND SERVANT—*Breach of Contract of Hire.* A state employe who has been illegally discharged is entitled to compensation for the loss incurred by such illegal action.

*Error to the District Court of the City and County of Denver, Hon. Julian H. Moore, Judge.*

Mr. VICTOR E. KEYES, attorney general, Mr. CHARLES ROACH, deputy for plaintiffs in error.

Mr. A. R. MORRISON, for defendant in error.

*En banc.*

MR. JUSTICE TELLER delivered the the opinion of the court.

ON the tenth of January, 1921, defendant in error was in the employ of the board of capitol managers as a janitor at the statehouse, being within the classified civil service of the state by virtue of the fact that he was so employed when the civil service amendment to the Constitution became effective in 1918.   On the date first mentioned the civil service commission, on charges filed by the board of capitol managers, entered an order removing Rusan from said service, without, however, having given him a hearing on the charges.   That order was afterwards vacated, by

order of the district court, a hearing was had, and another order entered removing Rusan. He thereupon obtained a writ of mandamus commanding the issue by the defendants, plaintiffs in error here, of such vouchers or other papers as are required to effect payment by the state to the plaintiff of $495.83, being the amount of plaintiff's wages from January 1, 1921, to November 16, 1921, when he was discharged, less the sum which he was shown to have received as earnings during said period from employment elsewhere. The cause is before us for review.

Plaintiffs in error rely upon *Thompson v. Denver,* 61 Colo. 470, 158 Pac. 309, Ann. Cas. 1918B, 915, which affirmed a judgment for the defendant in an action by a police operator for salary during a period in which he was wrongfully excluded from office. The ruling is based upon the fact that the plaintiff was a public officer, and follows two cases in this court, holding that "an officer *de jure* cannot recover from a municipal corporation salary paid by it to an officer *de facto* during the period the officer *de jure* was deprived of his office; in other words, that payment of salary by the municipality to an officer *de facto,* who discharges the duties of the office is a good defense to an action therefor against it by the officer *de jure.*"

The rule thus announced is based, in the opinion, "on public policy, to the effect that the people cannot be compelled to pay twice for the same service."

This rule is applied to officers; the cases by which it is established holding that the salary is an incident to the office, and belongs to the officer *de jure,* though another has performed the duties. Were that question still open in this jurisdiction, it would be pertinent to suggest that the rule is of English origin when offices were capable of being assigned, and the subject of inheritance. The rule, however inapplicable to offices in this country, is firmly established in this state. The reasons upon which it has been adopted, whether as above stated, or upon public policy, do not apply in the case of a mere employe of the

state to whose position, held by contract only, there can be no right attached as an incident to it. He is entitled to receive only what he has earned, or might have earned, while the contract of hiring is in force.

There is no public policy which denies an employe of the state the right to recover such damages as he has actually sustained by a breach of contract on the part of the state.

It is not necessary, however, to question the correctness of the announcement that public policy prevents the state's being required to pay twice for the same service, inasmuch as in this case it does not appear that the services which the plaintiff would have rendered have been performed by any one.

From the record it appears that there were a number of janitors employed, and no one of them had specified, continuous services to perform. The relation between the state and the plaintiff was contractual, and we know of no rule of law which would justify a withholding from him of compensation for the loss which he incurred by the illegal action of the agents of the state. The trial court allowed the plaintiff only what he actually lost by reason of the dismissal, he having been employed, during a part of the time, at least, elsewhere. No sound public policy can deny to the plaintiff a right to recover under such circumstances, and if the contention of the attorney general be sustained, the civil service amendment to the Constitution becomes wholly ineffectual as a protection to state employes. While the rule as to public officers has been established as above stated, we see no reason why it should be extended to cases clearly not within the reasons upon which the rule is founded.

Defendant in error cites *Civil Service Commission v. Casey*, 67 Colo. 398, 181 Pac. 193, in which the license inspector, who had been dropped from the payroll of the city, was refused by the plaintiff in error a certificate entitling him to his salary. The granting of a writ of mandamus from the district court commanding payment

of said salary was affirmed by this court. In the opinion it is pointed out that no one had served in the position from which plaintiff had been removed, and that the rule of public policy did not apply. While the case is not squarely in point, it recognizes principles which, when applied to this case, support the judgment.

The judgment is accordingly affirmed.

MR. JUSTICE CAMPBELL not participating.